**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ping Ping Zhou, ) | No. CV 07-0785-PHX-DGC (ECV) |
| Petitioner, ) | **MEMORANDUM OF DECISION ON** |
| ) | **TEMPORARY STAY OF REMOVAL** |
| vs. ) | |
| ) | |
| Katrina Kane, et al., ) | |
| Respondents. ) | |

The Court has entered a Temporary Stay of Removal enjoining Petitioner's removal from the United States until Friday, June 29, 2007. Dkt. #19. This Memorandum explains the Court's reasoning for that decision.

**I.   Background.**

Petitioner is a native and citizen of the People's Republic of China who entered the United States on August 11, 2003. Upon her arrival, Petitioner was apprehended by immigration officials and placed in detention. On December 2, 2003, an immigration judge denied Petitioner's application for asylum and entered an order for her removal from the United States as an unlawful arriving alien. Petitioner did not appeal from the immigration judge's decision. On June 16, 2004, following a "Post Order Custody Review," Petitioner was granted release under an order of supervision pursuant to 8 U.S.C. § 1231(a)(3).

On March 29, 2006, Petitioner married a United States citizen and they now have a United States citizen child. On April 10, 2006, Petitioner's husband filed a Form I-130 Relative Immigrant Visa Petition on Petitioner's behalf. On July 14, 2006, the United States Customs and Immigration Services (CIS) approved the I-130 petition. Petitioner thereafter

1 requested that the Immigration and Customs Enforcement (ICE) join her in a motion to
2 reopen her removal proceedings to allow her to apply to adjust her status.  In November
3 2006, ICE declined Petitioner's request.

4       On March 21, 2007, Petitioner was served with a Notice of Revocation of Release and
5 taken into ICE custody.  On April 4, 2007, Petitioner submitted a Request for Parole for
6 Consideration of Adjustment of Status.  On May 17, 2007, Petitioner filed a Form I-485
7 Application for Adjustment of Status with CIS.  Petitioner avers that her requests for parole
8 and for adjustment of status are still pending.

9       On April 14, 2007, Petitioner initiated this action by filing a Petition for Writ of
10 Habeas Corpus (Dkt. #1) and a Motion for Preliminary Injunction (Dkt. #2) seeking a stay
11 of removal pending a determination on the merits of her underlying Petition.  On April 16,
12 2007, the Court denied Petitioner's Motion for Preliminary Injunction because she had failed
13 to demonstrate that her removal was imminent.  The Court, however, required Respondents
14 to file a Notice of Intent to Remove if they intended to remove Petitioner prior to the
15 disposition of her Petition.  The Court also required Respondents to answer the Petition.
16 Respondents' subsequent Motion for Enlargement of Time (Dkt. #12) has been granted (Dkt.
17 #14) and Respondents' answer to the Petition is due on June 1, 2007.

18       On May 18, 2007, Respondents filed a Notice of Intent to Remove (Dkt. #15)
19 indicating that they planned to remove Petitioner from the United States on May 24, 2007.
20 On May 16, 2007, Petitioner filed a Motion for Temporary Restraining Order (Dkt. #16)
21 seeking a stay of removal.  On May 23, 2007, Respondents filed a Response in Opposition
22 to Petitioner's Motion for Temporary Restraining Order (Dkt. #18) and, on the same day, the
23 Court heard oral argument on Petitioner's Motion.

24       On May 24, 2007, the Court granted Petitioner's Motion for Temporary Restraining
25 Order and enjoined Petitioner's removal from the United States until Friday, June 29, 2007.
26 The Court also set a briefing schedule on Petitioner's application for a preliminary
27 injunction.  The parties' briefs should address, among other matters, the issues raised in this
28 Memorandum.

## II. Jurisdiction.

Respondents argue that the Court lacks jurisdiction to entertain Petitioner's underlying Petition for Writ of Habeas Corpus. Respondents first argue that 8 U.S.C. § 1252(a)(5) deprives the Court of jurisdiction because it provides that the "sole and exclusive means for judicial review of an order of removal" is a petition for review in the court of appeals. But Petitioner is not seeking review of an order of removal. Rather, she argues that it would violate her due process rights to deport her from the United States before her application for adjustment of status has been adjudicated. Because Petitioner's claim does not seek "review of an order of removal," 8 U.S.C. § 1252(a)(5) does not bar this habeas corpus action.

A more difficult issue is presented by Respondents' argument that the Court lacks jurisdiction under 8 U.S.C. § 1252(g):

> Exclusive Jurisdiction. - Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act.

The Supreme Court has held that § 1252(g) "applies only to three discrete actions that the Attorney General may take; [his] 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 472, 482 (1999) (emphasis in original). Section 1252(g) "was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." *Id*. at 485 n.9.

The Ninth Circuit has narrowly construed § 1252(g). *Kwai Fun Wong v. United States*, 373 F.3d 952, 964 (9th Cir. 2004). "[T]he reference to executing removal orders appearing in § 1252(g) should be interpreted narrowly, and not as referring to the underlying merits of the removal decision." *Id*. (citing *Maharaj v. Ashcroft*, 295 F.3d 963, 965 (9th Cir. 2002)) (internal quotations omitted). For this reason, § 1252(g) does not bar "all claims relating in any way to deportation proceedings." *Catholic Soc. Servs., Inc. v. INS*, 232 F.3d 1139, 1150 (9th Cir. 2000) (en banc). Rather, § 1252(g) is limited to the discretionary

exercise of removal power and does not apply to purely legal questions that do not challenge the Attorney General's discretion. *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004).

Construing the statute narrowly, the Ninth Circuit has held that § 1252(g) does not divest courts of jurisdiction to hear certain constitutional challenges to immigration and deportation policies and procedures. *See Catholic Soc. Servs.*, 232 F.3d at 1150 (§ 1252(g) did not prevent the district court from granting a preliminary injunction in a class action challenging advance parole policy); *Sulit v. Schiltgen*, 213 F.3d 449 (9th Cir. 2000) (section 1252(g) did not prevent due process claims relating to seizure of green cards and failure to notify aliens of requirement that they surrender for deportation); *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1234 (9th Cir. 1999) (district court had jurisdiction to grant a stay of deportation to a class of aliens to allow them to challenge certain INS regulations); *Walters v. Reno*, 145 F.3d 1032 (9th Cir. 1998) (district court had jurisdiction to grant injunctive relief to a class of aliens challenging certain deportation procedures on due process grounds). The Ninth Circuit has flatly rejected the argument that a district court lacks "jurisdiction to order any relief that interfered with [the Government's] attempt to execute deportation orders[.]" *Barahona-Gomez*, 167 F.3d at 1234 (citing *Walters*, 145 F.3d at 1052).

Here, Petitioner does not challenge the Attorney General's exercise of discretion – she does not argue that the decision to execute her removal order was an abuse of discretion. She instead makes the legal argument that her removal would violate her constitutional and statutory rights. Even though the REAL ID Act of 2005 stripped courts of jurisdiction to consider habeas corpus petitions that challenge certain aspects of the Attorney General's discretionary authority, a court may still decide habeas claims that involve a constitutional or statutory challenge to immigration proceedings. *See, e.g.*, *Madu v. United States Attorney General*, 470 F.3d 1362, 1367 (11th Cir. 2006).

For these reasons, Petitioner's habeas corpus claim seems to fall outside the reach of § 1252(g) and the Court therefore exercised jurisdiction to grant the temporary restraining order. The Court recognizes, however, that § 1252(g) is worded broadly, and this

preliminary determination is not intended to preclude the parties from further addressing this issue in the briefing called for in the Court's temporary restraining order.

In any event, because the Court retains jurisdiction to decide whether it has jurisdiction, *see Lopez-Molina v. Ashcroft*, 368 F.3d 1206, 1208 (9th Cir. 2004), the lack of a final answer on the issue does not preclude the entry of an order maintaining the status quo until additional briefing can be reviewed.

**III.   Temporary Stay of Removal.**

**A.   Standard.**

The standard for a stay of removal is the same as the standard for a preliminary injunction. *Andreiu v. Ashcroft*, 253 F.3d 477 (9th Cir. 2001) (*en banc*); *Abbassi v. INS*, 143 F.3d 513, 514 (9th Cir. 1998); *see also Maharaj v. Ashcroft*, 295 F.3d 963, 966 (9th Cir. 2002) (applying the same standard to motions for stay of removal pending appeal from a decision denying an alien's habeas petition). A party seeking a stay of removal must demonstrate "'either (1) a probability of success on the merits and the possibility of irreparable injury, or (2) that serious legal questions are raised and the balance of hardship tips sharply in [its] favor.'" *Andreiu*, 253 F.3d at 483 (quoting *Abbassi*, 143 F.3d at 514). "'These standards represent the outer extremes of a continuum, with the relative hardships to the parties providing the critical element in determining at what point on the continuum a stay pending review is justified.'" *Andreiu*, 253 F.3d at 483 (quoting *Abbassi*, 143 F.3d at 514).

**B.   Balance of Hardships.**

Respondents concede that Petitioner "presents a sympathetic case and no doubt would have hardships were she removed from the United States." Dkt. #18 at 10. But they assert that Petitioner is not entitled to a stay of removal because the harm she would suffer as a consequence of her removal is not irreparable. They argue that if she is removed, Petitioner would be eligible to apply for an immigrant visa through Consular Officer processing in China.

The possibility that Petitioner might be eligible to return to the United States at some uncertain date in the future does not obviate the irreparable harm Petitioner would suffer if she were removed.  Even if the Court assumes that Petitioner could some day return to the United States from China (a fact that is not certain), Petitioner's separation from her husband and young child for many months or, more likely, years, would cause her substantial and irreparable harm.  Counsel for Petitioner also informed the Court during the hearing that Petitioner is pregnant.  Giving birth while separated from her husband and child would impose additional hardship. Respondents, by contrast, will suffer little or no hardship if Petitioner's removal is delayed.  The Court therefore finds that the balance of hardships tips sharply in Petitioner's favor.  Accordingly, if there is a serious question on the merits, a stay of removal should be granted.

### C.     Serious Question on the Merits.

Petitioner claims that she has a right to apply for an adjustment of her status and that it would violate her due process rights to deport her before her application is adjudicated.  Specifically, she argues that an Interoffice Memorandum issued by the CIS on January 12, 2007, grants her the right to apply for an adjustment of status.  The Court finds that the issue of Petitioner's right to apply to adjust her status raises a serious question, but that the right, if it exists, arises not from the CIS Interoffice Memorandum, but from 8 U.S.C. § 1255(a).

The CIS issued the Interoffice Memorandum to revise its Adjudicator's Field Manual in order to account for an interim rule issued by the Department of Homeland Security (DHS) on May 12, 2006.  The Interim Rule was enacted in response to *Bona v. Gonzales*, 425 F.3d 663 (9th Cir. 2005), and other cases which invalidated the regulations – 8 C.F.R. §§ 245.1(c)(8), 1245.1(c)(8) – that prohibited arriving aliens who have been placed in removal from seeking an adjustment of their status.[1]  71 Fed. Reg. 27585 (May 12, 2006).

---

[1] The regulations were identical, but § 245.1 applied to agencies within the DHS, whereas § 1245.1 applied to the immigration courts and the BIA. The regulations provided:

(c) . . .  The following categories of aliens are ineligible to apply for

- 6 -

The petitioner in *Bona* was an arriving alien who had been paroled into the United States in 1991. Later that same year, her husband became a naturalized citizen. After her husband's naturalization, Bona applied to adjust her status. The former Immigration and Naturalization Service denied Bona's application for adjustment and revoked her parole. Years later, Bona was placed in removal proceedings where she made a new application to adjust her status. The immigration judge found that Bona was removable. He also denied her application for adjustment because, as an arriving alien in removal proceedings, she was ineligible for such relief under the regulations.

On appeal to the Ninth Circuit, Bona argued that the regulations prohibiting arriving aliens from applying to adjust their status in removal proceedings are in direct conflict with 8 U.S.C. § 1255(a). The Ninth Circuit agreed, holding that the regulations "directly conflict[] with 8 U.S.C. § 1255(a), which allows any alien who has been 'inspected and admitted *or paroled*' into the country to apply for adjustment of status." *Bona*, 425 F.3d at 668 (emphasis in original). The Ninth Circuit explained that in enacting 8 U.S.C. § 1255(a) Congress "made the clear policy choice that [paroled inadmissible aliens] should be eligible to apply for adjustment of status." *Bona*, 425 F.3d at 669.

> By entirely excluding a category of aliens from the ability to apply for adjustment, who by statute are eligible to apply for such relief, the regulation goes beyond simply regulating the manner in which such applications shall be made or the discretionary decision to grant such relief. Rather, the regulation strips statutory eligibility for such relief in any form from this entire category of aliens once they are placed in removal proceedings. The statute provides for no such restriction . . . .
>
> Although Congress delegated to the Attorney General the discretionary authority to grant or deny an application for an adjustment of status, 8 U.S.C. § 1255(a), Congress did not delegate to the Attorney General the discretion to choose who was eligible to apply for such relief. Thus, . . . Congress has spoken to the precise issue of who is eligible to apply for adjustment of status and . . . 8 C.F.R. § 245.1(c)(8) is directly contrary to this Congressional determination.

---

adjustment of their status to that of a lawful permanent resident alien under section 245 of the Act[, 8 U.S.C. § 1255]:

. . . .

(8) Any arriving alien who is in removal proceedings pursuant to section 235(b)(1) or section 240 of the Act . . . .

- 7 -

*Id.* at 670-71.

On May 12, 2006, the Attorney General, noting that there was an inter-circuit conflict on the validity of the regulations, determined to resolve the controversy by repealing 8 C.F.R. §§ 245.1(c)(8) and 1245.1(c)(8) in an interim rule. 71 Fed. Reg. 27585. The Attorney General's interim rule also amended the regulations to clarify which departmental component has jurisdiction to adjudicate adjustment of status applications made by paroled arriving aliens who have been placed in removal proceedings. *Id.* The Interoffice Memorandum issued by the CIS on January 12, 2007 does not alter the regulatory landscape with respect to an arriving alien's *eligibility* to apply for adjustment of status. The Interoffice Memorandum merely explains that 8 C.F.R. §§ 245.1(c)(8) and 1245.1(c)(8) have been repealed and provides guidance about which departmental component has jurisdiction to adjudicate adjustment of status applications. Thus, nothing in either the interim rule or the Interoffice Memorandum altered the rule announced in *Bona*: under 8 U.S.C. § 1255(a) an arriving alien who has been paroled into the United States is eligible to apply for an adjustment of status notwithstanding the commencement of removal proceedings.

If Petitioner is an arriving alien who has been paroled into the United States, she has a statutory right under 8 U.S.C. § 1255(a) to apply for an adjustment of her status. *See Bona* 425 F.3d at 670-71. Thus, Petitioner's claim that her due process rights would be violated by her removal from the United States before she can exercise her right to seek that relief presents a serious question. Respondents object on the ground that Petitioner has no due process liberty interest in obtaining adjustment of her status because adjustment of status is purely discretionary. It is true that Petitioner has no constitutional right to obtain an adjustment of status, but Petitioner is not asking the Court to adjust her status. Rather, she argues that she has the right to a ruling on her eligibility for discretionary relief.

> Traditionally, the courts recognized a distinction between eligibility for discretionary relief, on the one hand, and the favorable exercise, on the other hand. Eligibility that was "governed by specific statutory standards" provided "a right to a ruling on an applicant's eligibility," even though the actual granting of relief was "not a matter of right under any circumstances, but rather is in all cases a matter of grace." Thus, even though the actual suspension of deportation authorized by § 19(c) of the Immigration Act of 1917 was a matter of grace, in *United States ex rel. Accardi v. Shaughnessy*,

> 347 U.S. 260, we held that a deportable alien had a right to challenge the Executive's failure to exercise the discretion authorized by the law.

*INS v. St. Cyr*, 533 U.S. 289, 307-08 (2001) (quoting *Jay v. Boyd*, 351 U.S. 345, 353-354 (1956)). As in *St. Cyr*, this Court's "exercise of . . . habeas corpus jurisdiction to answer a pure question of law . . . is entirely consistent with the exercise of such jurisdiction in *Accardi*." *St. Cyr*, 533 U.S. at 308.

The parties have not adequately briefed the question of whether Petitioner qualifies under 8 U.S.C. § 1255(a) as an arriving alien who has been paroled into the United States. But the Court need not resolve that question now. It is sufficient for present purposes that Petitioner has raised serious questions on the merits of her claim.

**IV.    Conclusion.**

The balance of hardships tips sharply in Petitioner's favor and she has raised a serious question on the merits of her claim. Petitioner has therefore satisfied the requirements for a temporary restraining order as provided in the Court's Temporary Stay of Removal (Dkt. #13). The parties' briefs on Petitioner's application for a preliminary injunction should address, among other matters, the issues raised in this Memorandum.

DATED this 29th day of May, 2007.

David G. Campbell
United States District Judge